EXHIBIT

(A)

Lamont-O'shea..Douglas
(SN 1159899/O.S.01867111)
Trenton State Prison
P.O.Box 861
Trenton, New Jersey uSA
**Movant-petitioner, Pro-se**
**Presently confined**

<table>
<tr><td>Lamont-O'shea..Douglas<br>Movant,<br>v.<br><br>Commissioner, New Jersey<br>Department of<br>Corrections<br>Respondent,</td><td>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:</td><td>Superior court of New Jersey<br>Law Division-Mercer County<br>Docket No. **Initial filing**<br><br>**Civil Action**<br>NOTICE OF MOTION<br>FOR HOME-CONFINEMENT</td></tr>
</table>

Re: **Lamont-O'shea..Douglas v. Commissioner New Jersey**
    **Department of corrections**
    **Law division No.: Initial filing**

**Please Take NOTICE**, that the Movant Lamont-O'shea..Douglas, is petitioning this court for and ORDER under R. 3:21-10 (b)(2) and New Jersey Decision; '**In The Matter Of The Request To Modify Prison Sentences, 242 N.J. 357 (2020)**' for Home Confinement due to 8th amendment conditions of confinement and health complication that puts movant at a higher risk of death from covid or its variants.

**Please take further Notice**, that movant shall rely on the attached certificate and documents in support of this motion.

Date: 12-23-21

Lamont-O'shea..Douglas
Lamont-O'shea..Douglas
Pro-se, sui juris,

1

(1159899/O.S.01867111)
Trenton State Prison
P. O. Box 861
Trenton, New Jersey uSA

Lamont-O'shea..Douglas
(SN 1159899/O.S.01867111)
Trenton State Prison
P. O. Box 861
Trenton, New Jersey uSA
**Movant-petitioner, Pro-se**
**Presently confined**

| | | |
|---|---|---|
| Lamont-O'shea..Douglas | : | Superior court of New Jersey |
| Movant, | : | Law Division-Mercer County |
| v. | : | Docket No. **Initial filing** |
| | : | |
| Commissioner, New Jersey | : | **Civil Action** |
| Department of | : | CERTIFICATE IN SUPPORT |
| Corrections | : | OF MOTION |
| Respondent, | : | |
| | : | |

I, Lamont-O'shea..Douglas, being of full age, in lieu of my oath hereby certify that:

I am the movant in the above caption action, presently confined at New Jersey state Prison, Moving this court for an ORDER granting this motion for Home Confinement pursuant to R. 3:21-10(b)(2) and/or its equivalent Virginia Code §8.01-428.

By contract with New Jersey DOC Movant is entitled to ALL powers, privileges, and immunities as any other New Jersey State Prisoner. Also by contract... 'Upon transfer, an offender will be entitled to any hearings entitled to under the laws of the sending state...'

#1. I am the movant in the above matter presently confined to the custody of the commissioner of corrections by contract in the State of New Jersey. Presently at Trenton State prison, New Jersey.

#2. I base this affidavit and information contain herein on personal knowledge and factual experience.

#3. Movant is 46 and has serious pre-existing health and medical conditions that put petitioner at a significantly higher risk of severe disease and death if I contract covid-19 or its variants delta, or Omicron.

#4. Movant has deep vein thrombosis, has massive blood clotting, was hospitalized for one year and a half for heart defect at Virginia medical college 'MCV', breathing difficulty from breathing bird and rat feces at Southampton farm in Capron Virginia, compromised immune system from histoplasmosis. (Had chicken pox when I was younger, was malnutrition as a baby and hospitalized for a year before I was allow home,) On several medicines' for these ailments.

#5. The conditions at Trenton place movant at higher risk than being confined at home. Risk mitigation is impossible and non-existent at Trenton: Due to deliberate indifference to serious medical needs deliberate indifference to conditions of the Institution.

2

#6. Medical staff at Trenton are deliberate indifferent to serious medical needs and convalescent health care to it patients:

• **life sustaining** medication is not ordered as prescribed nor issued on time.

• **life sustaining** medicine is withheld for reprisal on grievances filed against medical.

• **nurse's intentionally** inject T.B. test in the muscle, not under the skin, petitioner has already been on triple antibiotic's for tuberculosis at Red Onion State Prison, but here at Trenton nurse's document movant as negative, not pass positive.

• **patient's rights** are not posted to control and abuse prisoners.

• **If** you are quarantine for possible covid-19 infection medical care is non-existent due to deliberate, irrational fear that prisoner are the ones spreading the covid-19 virus.

• **Staff (in particular) officer Lewis** in medical and medical staff mandates masks even when I have respiratory distress and difficulty breathing...you are refused KOP's medicine and treatment if you don't put the mask on during your respiratory distress, and breathing difficulty.

• **medical treatments** are intentionally limited by NJDOC proscribe/approved treatment based on price. The treatments will not be prescribed over a certain dollar amount even though your condition calls for it.

3

#7. The living conditions are bleak at best:

•**Contaminated water**- prison officials have long known that the water supply to the entire prison is toxic and unsafe to drink. They have never notified prisoners of water test results or related health threats. Prison guards and civilian staff know not to drink the water. They carry bottled water. The water supply to the west compound is especially dangerous and creates and excessive risk to health. The water is known to contain high levels of sediment, heavy metals (including lead), fecal matter, and high levels of trihalomethanes (THM's), including chloroform.

•**Inadequate Unit ventilation**-cell units are inadequately ventilated. Roof vents are either sealed or obstructed with sediment and dust. There are no external fans for shower areas, and many windows no longer open, allowing steam to circulate in the air, increasing humidity, and contributing to the growth of mold and mildew. Dust particle levels in the air, due in part to the oxidation of asbestos, corroding brick, stone, and metals, and in part from lack of maintenance and sanitation, together with unsafe levels of bacteria, fungus, and mildew, create an excessive risk of injury for petitioner already suffering from breathing difficulty. Prison officials are aware of the threat to health posed by these conditions but have taken no action to eliminate or mitigate the problem.

•**cell ventilation**-the cells have no internal ventilation of any kind. Although the cells have barred doors, recessed doorways create an air lock which constricts circulation. As a result, air exchanged is severally reduced and not surprisingly stagnant.

•**Excessive Heat**-the cells literally turn into ovens during the summer months, due in part to inadequate ventilation, and in part to the use of heat retaining and radiating red bricks. Ambient temperatures in cells can reach 100 degrees, Heat index readings of 105 degrees are known to cause heat exhaustion and sunstroke. **(ON AUGUST 18, 2021 AT APPROX. 5:30 P.M. THE EVENING PILL PASS NURSE PASSED OUT ON THE UNIT DUE TO HEAT EXHAUSTION)** Prison officials are aware of the risk of injury posed by heat but have not taken action to improve ventilation.

•**Rodents and Insect infestation**- rodent and insect infestation continues to threaten the health and safety of prisoners. Rats and roaches roam the unit bold as brass. Failure to eradicate the problem or provide rodent screens for open cells doors demonstrates a callous disregard for the health and safety of petitioner.

•**Inadequate Heating**-west compound do not have internal heat. Cell temperature can decline to below freezing in the winter. Petitioner often wears coat, hat, and gloves while in the cell and while sleeping. Two heating units placed on uninsulated exterior walls on the ground floor are improperly maintain and ineffective. One

unit has been broken for over a year. ~~Broken and~~ uninsulated windows exacerbate the problem.

**•Asbestos**-The west compound still contains decomposing asbestos pipe insulation. The partial cleanup done by untrained prison laborers was not done in accordance with acceptable asbestos abatement standards. The cell units, basement, school, shop areas, lower level kitchen storage areas, all have unacceptably high levels of asbestos residue and dust, posing an immediate risk of injury to petitioner with respiratory difficulty and future risk of injury if infected by covid.

**•Lack of exercise**-defendants have deliberately ignored the physical and mental health needs of petitioner by not implementing the Isolation Confinement Restriction Act policy of 5 hours out of cell time daily which exacerbate all the rest of the conditions petitioners is suffering from.

**•Cell sanitation**-cleaning supplies and cell sanitation are done may be twice a month. Water dispensers are never cleaned has rat feces, dead bugs on and around them dead roaches inside the caged units that house the water dispensers.

**•Kitchen sanitation and food service**-food nutrition fails to meet basic dietary standards and would not aid petitioners immune system in fighting off the covid-19/delta variant virus. Petitioner had a very detailed, dates and times, log-book of the conditions and food portions, serving sizes since the pandemic began. This log

6

book was confiscated during a cell search which petitioner was not present at. Food when brought to the unit is not stored at proper temperature, to prevent spoliation, bacteria, sat on the floor, served by non-trained food handlers, people who are sick, no hand sanitation is used, floors are never mopped before and after food is served on the unit. I've found dead roaches on my food tray's. •**food storage** (dry and refrigerated) and food preparation areas are infested with rodents and insects. Even after staff is informed that rodents and insects have invaded, eaten, and left droppings in the bulk food items like bags of flour, oatmeal, and rice kitchen workers are ordered to put the contaminated food into service.

•**Calorie intake**- while menus would leave readers with the impression that portions meet weighted dietary standards; in actual practice, the portions parsed out fall far short of these standards.

•**Styrofoam Trays and coolers**-Styrofoam trays overused for regular food service since the pandemic began Styrofoam has been used to pass out all food breakfast, lunch, and dinner. Not only do Styrofoam trays emit dangerous formaldehyde gas when hot foods are placed on them, but undersized compartments translate into reduced portions and meals which provides less than 300 calories.

•**Lack of training**-Defendants terminated the culinary program at NJSP. Prisoners currently assigned kitchen duties were not and are

not provided any formal training. They are unable to recognize common problems associated with quality control, like food spoilage, freezer burn, outdated stock, rodent or insect contamination, salmonella, listeria, and other hazards associated with institutionalized food service. Mass food poisonings and hospitalizations have occurred. Meal preparation is poor, and workers exhibit little care or consideration for their work. The callous disregard for culinary training and supervision renders what is already a nutritionally deficient diet into one where the entirety of the meal cannot be consumed.

#8. For petitioner to be inoculated with vaccines that will weaken his already compromised immune system opens petitioner to mutations in dormant viruses in petitioners body complex...chicken pox mutate to shingles, etc.. Movant is also a conscientious objector to inoculation, blood transfusions/transfers, and vaccines that causes severe allergic reactions in movants body complex.

#9. Movants life and liberty is at tremendous stake while being held hostage on dangerous, hostile government property.

#10.   For   movant   to   die   in   **A/any**   prison   that   does   not   have   jurisdiction   to   confined   movant   would   be   a   grave   violation   of   the   Constitutional   limitation   place   on   government.

#11.   Movant   a   juvenile   was   charged   with   felonies   in   Virginia   as   a   juvenile   the   prosecutor   Robert   F.   Horan,   Senior,   initiated   certification   as   adult   proceedings.

#12.   My   original   counsel   Barbara   Sue   Carter,   appealed   this   decision   to   the   circuit   court   judge   Bruce   F.   Bach.   Judge   Bach,   made   the   ERRONEOUS   decision   not   to   review   the   papers   and   held   the   certification   hearing   was   proper   and   bound   me   over   for   trial   as   an   adult.

I   was   subsequently   found   guilty   and   sentence   to   prison.   On   appeal   the   Virginia   Court   of   Appeals   reverse   the   decision   and   determine   "the   trial   court   was   not   empowered   to   try"   me.   Lack   of   jurisdiction.   (Attached   is   my   Virginia   Court   of   Appeals   Order,   incorporated   herein   by   reference.)

#13.   My   original   counsel   Barbara   Carter,   was   receiving   death   threats   that   if   she   got   me   off   on   the   charges,   she   would   be   killed,   so   she   recused   herself   off   the   case   once   my   case   was   overturned.   At   that   time   she   informed   me   (who   was   seventeen)   not   to   plead   guilty   and   study   the   law,   that   she   could   not   represent   me   any

further and that she did not like what was going on in my case [sic] *due to threats*, and that I should not give up <u>ever</u>, to pay attention and study the law and procedure on jurisdiction.

"Jurisdiction has been defined as "the power of a court to hear and determine a cause, which power is conferred by constitution or by statute, or both." <u>Penn v. Commonwealth</u>, 32 Va.App.422, 428 (2000) (citing <u>Erickson-Dickson v. Erickson-Dickson</u>, 12 Va. App. 381, 388 (1991)). The general jurisdiction of the circuit courts of Virginia are govern by Va. Code. §17.1-513, which provides that the circuit courts "shall...have original jurisdiction of all indictments for felonies and of presentments, informations, and indictments for misdemeanors."

Where a criminal conviction is entered by a court acting without proper jurisdiction, that conviction is void. <u>Winston v. Commonwealth</u>, 26 Va. App. 746,750-51 (1998) (citing <u>Humphreys v. Commonwealth</u>, 186 Va. 765, 772 (1947)). Any void judgment, including a void criminal conviction, such as the one in this case, "may be attacked collaterally or directly in any court at any time." <u>Winston,</u> 26 Va. App. at 751 (citing <u>Humphreys,</u> 186 Va. at 772).

A void conviction "cannot be a legal cause of imprisonment." <u>Herrera v. Commonwealth</u>, 24 Va. App. 490, 493 (1997) (citing <u>Ex parte Siebold</u>, 100 U.S. 371, 376-77 (1879)). Therefore, someone

who is imprisoned as a result of a void conviction is not "lawfully

in custody.""

#14. I did not comprehend what she was eluding at, but committed

this conversation to memory.

#15. Glen L. Clayton, was appointed to represent me at the Remand

hearing at which time Judge Bach, was visibly upset that the case

was overturned based on his ruling. He question the Attorney's

Clayton and Robert Horan, Junior, (the son of Robert F. Horan

Senior) why the court of appeals made that decision when it was

evident I was guilty of the charges.

#16. At this time Attorney Clayton, sold my liberty interest out

and consented to the re-issue of jurisdiction in violation of legal

precedent. I would have never agreed to voluntarily come back to

prison, had I been able to participate in the proceedings.

#17. I am not waiving my Powers, Privileges or Immunities the state

of Virginia recognizes. Virginia courts have, in effect, refused

to adopt the federal remedy and have taken the firm position that

they have no procedure or authority which would permit them to

hold a reconstruction hearing to determine whether original

certification or transfer was proper. Brown v. Cox 467 f.2d 1255 at 1262 (C.A.4(Va.)1972). Morrison V. Bestler 239 Va. 166 (1990)

#18. It would be a grave travesty for me to die in prison of covid-19, delta or Omicron variant, when the state never had jurisdiction to confine me on dangerous government property. In addition, I do not pose a public safety concern because I am actually innocent. Movant is going to a stable home environment with family members Kenya Douglas, sister; Carlos Davis, father; Charmaine Douglas, mother; Address: 902 N. Alfred St. Alexandria Virginia 22314. Phone number (240) 882-6506.

#19. Attached is a prison legal news article out lining some of the bleak conditions of confinement here at Trenton, and is incorporated herein by reference.

For the foregoing reasons and relief sought above movant seeks an ORDER granting this motion for Home Confinement.

## CERTIFICATION

The foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false I am subject to punishment.

12

Date: 12-23-21 _____

_Lamont-O'shea..Douglas_ _____
Lamont-O'shea..Douglas
Pro-se, sui juris,
(1159899/O.S.01867111)
Trenton State Prison
P. O. Box 861
Trenton, New Jersey uSA

# *VIRGINIA:*

*In the Court of Appeals of Virginia on* Tuesday *the* 6th *day of* December, 1994.

Lamont O. Douglas,        Appellant,

against      Record No. 2277-92-4
           Circuit Court No. CR75523

Commonwealth of Virginia,        Appellee.

             Upon an appeal from a judgment rendered by the Circuit Court of Fairfax County.

### Before Judges Baker, Benton and Bray

For reasons stated in writing and filed with the record, the Court is of opinion that the trial court was not empowered to try appellant because the record fails to show that it held the proper hearing or conducted a meaningful review as required by law to transfer a juvenile from the juvenile court to the circuit court for trial as an adult. Accordingly, the judgment is reversed and annulled, and the case is hereby remanded to the trial court for such further proceedings as the Commonwealth may be so advised.

It is ordered that the trial court allow counsel for the appellant a fee of $200 for services rendered the appellant on this

Defendant's
Exhibit (A)

appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

       This order shall be certified to the trial court.

              A Copy,

                Teste:

                          Richard R. James, Clerk

                By:

                        Deputy Clerk

-2-

Lamont-O'shea..Douglas
(SN 1159899/O.S.01867111)
Trenton State Prison
P. O. Box 861
Trenton, New Jersey uSA
**Movant-petitioner, Pro-se**
**Presently confined**

_____
Lamont-O'shea..Douglas   :
       Movant,   :
  v.   :
          :
Commissioner, New Jersey   :
   Department of   :
   Corrections   :
       Respondent,   :
_____:

Superior court of New Jersey
Law Division-Mercer County
Docket No.

**Civil Action**

**ORDER**

**WITH THIS MATTER** having come before this court by movant seeking the following relief home confinement and the court having considered the moving papers filed by movant, and good cause having been shown:

**IT IS** on this _____ day of _____ **ORDERED** that movant be home confined temporary until the pandemic is over; It is Hereby

        GRANTED _____

        DENIED _____

          For the court

        _____
                 J.S.C

1

Lamont O. Douglas
SN-1159899/OS-01867111
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey 08625

|  |  |
|---|---|
| ——————————————— : | SUPERIOR COURT OF NEW JERSEY |
| : | LAW DIVISION-MERCER COUNTY |
| Lamont-O'Shea..Douglas : | DOCKET NO. **Initial Filing** |
| Next Friend On Behalf : |  |
| Of LAMONT O. DOUGLAS : | **CIVIL ACTION** |
| Plaintiff/Hostage : |  |
| : | Jury Trial Demanded |
| V. : | Injunctive Relief |
| : | Declaration Judgment |
| AMY EMRICH, : | Punitive Damages |
| P.R.E.A. Coordinator : | Compensatory Damages |
| SERGEANT DEFAZIO : | Nominal Damages |
| SERGEANT PATTERSON : |  |
| RICHARD ROE, : |  |
| Corrections Officer : |  |
| JOHN DOE, : |  |
| Corrections Officer : |  |
| : |  |
| ——————————————— : |  |

### STATUS AND STANDING

Plaintiff, <u>LAMONT O. DOUGLAS</u> (being represented by Lamont-O'Shea..Douglas, sui juris) a citizen of the United States and a resident of the State of New Jersey, being held hostage by the New Jersey Department of Correction (DOC), on interstate compact from Virginia, P.O. Box 863, Trenton, New Jersey 08625.

### DEFENDANT[S]

Amy Emrich, associate administrator and Prison Rape Elimination Act (P.R.E.A.) Coordinator, at New Jersey State Prison (NJSP). She has an office at Federal Street and Cass Street, P.O. Box 861, Trenton, New Jersey 08625.

She is responsible for the enforcement and protection of

the primary provisions of P.R.E.A. at NJSP, to include development of procedures at ~~the~~ ~~in~~stitutional level for the prevention of inmate sexual ~~abuse,~~ ~~sex~~ual assault and sexual harassment.

She is a state actor ~~acting~~ ~~under~~ the color of law and is being sued in her official capacity for declaratory and prospective injunctive relief. In her individual capacity for damages.

Sergeant (Sgt.) Defazio at NJSP.

Sgt. Patterson at NJSP.

Richard Roe, Corrections Officer (C/O) at NJSP,
    whom name is not known to plaintiff.

John Doe, C/O at NJSP,
    whom name is not known to plaintiff.

All defendants are sued in individual and official capacity for damages and injunctive relief.

### JURISDICTION AND VENUE

Congress enacted the Civil Rights Act to redress the deprivation, under color of law, of rights secured by the laws and constitution of the United States of America. 42 U.S.C. 1983. The New Jersey Legislative enacted the New Jersey Civil Rights Act to redress violations of rights secured by the laws and constitution of the United States and of New Jersey. New Jersey Statute Annotated (N.J.S.A.) 10:6-1.

The Superior Court has original jurisdiction over this action, pursuant to Article VI, section III, paragraph 2 of the New Jersey Constitution. New Jersey Court Rules (R.) 4:2-1 and the New Jersey Civil Rights Act. N.J.S.A. 10:6-2(d). The

New Jersey Tort Claims Act, Title 59. Authority of the court to issue declaratory and prospective injunctive relief can be found at R. 4:42-3; R. 4:52-1 and N.J.S.A. 10:6-2(c).

The action is properly assigned to the Superior Court of New Jersey, Law Division. R. 4:3-1(a)(4). Venue in Mercer County is proper because the action arose in the NJSP, which is located in Mercer County. R. 4:3-2(a).

### PRELIMINARY STATEMENT

Plaintiff, a hostage being held in the custody and care of the New Jersey DOC seeks damages, injunctive and declaratory relief to cure the state constitutional TORTS to her powers, privileges and immunities that were intentionally abridged by defendant[s] Emrich, etc. al.,

Plaintiff charges that defendant[s] was arbitrarily and deliberately indifferent to her health and safety under P.R.E.A. standards. 28 Code of Federal Regulations (CFR), part 115.

Plaintiff charges that defendant[s] arbitrarily and deliberately denied her protection from sexual abuse, sexual assault and sexual harassment under the zero tolerance P.R.E.A. standards.

Plaintiff charges that defendant[s] breach duties and obligations owed to her intentionally by failing to have hearings twice a year to ensure her safety and health was being cared for; by failing to seriously consider her views on the protection of her safety.

Plaintiff charges that defendant[s] violated her substantive liberty interest in freedom of bodily invasion.

Plaintiff charges that defendant[s] subversion of public policy <u>N.J.S.A.</u> Title 30:1B-3(c) caused her to be victimize within NJSP.

## STATEMENT OF FACTS

!.) On May 21, 2018, I was transferred to NJSP from Virginia Department of Corrections (VDOC) involuntarily.

2.) Upon arrival at NJSP, I was met by Sgt. Defazio, Sgt. Patterson, John doe, and Richard Roe who took me to a Intake Cell for strip search and clothing change.

3.) Prior to the strip search, I informed Sgt. Defazio that I was intersex and identified as female and required a female to do my intake search.

4.) Sgt. Defazio stated: "we don't do that Queer Shit here at NJSP, they may have done that at the other place you was at, but it's not going to happen here!"

5.) He then put his hand on his baton in a Threatening manner and asked, "are you refusing to be stripped searched?"

6.) Due to fear of being assaulted I complied with the search.

7.) During that strip search by Sgt. Patterson, he made me bend at the waist Four Times, each time lasted approximately two minutes, so he could get a good look at my Private Parts; Vagina; Anus; Testicles; and Penis. He then called other officers in so that they could get a look at my Private Parts, which they did, on two of the Four Times.

8.) I was then taken to unit 4B-Left, cell number five(5) where I was stripped searched again after Sgt. Defazio told the unit officers of my intersex situation and told them to look for themselves.

9.) When I was able to use the Kiosks Grievance System, I wrote a complaint about my status and that I needed protection from victimization by staff from intrusive degrading strip searches.

10.) I could not call P.R.E.A. to make a complaint on this matter because the telephone system is design so I can not call P.R.E.A. without an IPIN number.

11.) I spoke with the defendant; Amy Emrich, P.R.E.A. Coordinator, about this incident (Paragraph 3-8) and asked for protection from Sexual Abuse, Sexual Assault and Sexual Harassment.

12.) When I told defendant; Amy Emrich, P.R.E.A. Coordinator, about the intake incident she stated: "that is probably going to happen alot."

I also inform defendant; Amy Emrich, P.R.E.A. Coordinator, I was intersex and identified as female and wanted to be Pat-Frisked and stripped searched by female staff. She shrugged her shoulders and told me, "we don't follow that part of the P.R.E.A. here."

13.) Defendant Amy Emrich, P.R.E.A. Coordinator, opportunity to do better and protect me from, this type of treatment was made worse by her indifferent statements of: " we don't follow that part of P.R.E.A. here; that probably is going to happen alot."

14.) I wrote a final review appeal and was told a P.R.E.A. Coordinator would meet me to address my concerns.

15.) This P.R.E.A. Coordinator turned out to be the defendant; Amy Emrich. I again reiterated my request and explained serious consideration was not given to my view on my safety on strip search and Pat-Frisk. I, as to date, have received no hearing twice a year as per policy to ensure my health and safety was being protected. I told her I had the Pat-Frisk deviation status in VDOC.

16.) Defendant Amy Emrich, P.R.E.A. Coordinator, stated: " I will check into all of those issues" and walked off.

17.) I never received any hearing. Nor did she address any of my issues of a safe environment free from Sexual Abuse, Sexual Assault, and Sexual Harassmernt.

18.) I have complied with the New Jersey Notice Of Tort Claim Act. Six months have elapsed since that claim was submitted and received.

This suit has been commenced within two years of the claim and there has not been a valid settlement of the claim.

## SUBVERSION OF PUBLIC POLICY

19.) NJSP P.R.E.A. Coordinator; Amy Emrich, has purposely left standards undeveloped so that P.R.E.A. calls can not be made without you waiting for your IPIN Number.

Amy Emrich, has failed to put procedural guidelines in place to protect my substantive rights under P.R.E.A. has created an environment which is unsafe and unhealthy to

transgender/intersex individuals and promotes Sexual Abuse, Sexual Harassment, and Sexual Assault. Victimization of transgender/intersex prisoners by custody staff at NJSP when requesting protection from Victimization I was denied this benefit, by Amy Emrich.

### COUNT I
### VIOLATION OF SUBSTANTIVE DUE PROCESS

20.) I hereby incorporate paragraph 1-19 by reference as if they were pleaded in full.

By their customs, policies and practices, defendants have while acting under color of state law, subjected intersex/transgender persons in the New Jersey DOC to conditions of confinement which are arbitrary and capricious invades bodily security, and which taken as a whole offends fundamental fairness arising from the traditions and collective conscious of the people of the State of New Jersey, in violation of Article I, section I, of New Jersey Constitution.

### COUNT II
### VIOLATION OF PUBLIC POLICY

21.) I hereby incorporate paragraphs 1-19 by reference as if the were pleaded in full.

By their customs, policies and practices, defendants have violated Public Policy as expressed by laws of New Jersey by depriving plaintiff safe custody and equal treatment as a woman and by creating an environment that is hostile and inimical to transgender/intersex prisoners contrary to N.J.S.A. 30:1B-3(c) N.J.A.C. 10A:3-5.6; N.J.A.C. 10A:3-5.7 and by subjecting plaintiff to conditions which violates established P.R.E.A.

standards.

## COUNT III
## NEGLIGENT PLANNING AND DESIGN

22.) I hereby incorporate paragraphs 1-19 by reference as if they were pleaded in full.

Defendants owed plaintiff a duty to provide safe and healthy housing conditions. Defendants breached that duty by failing to adequately access, plan, design, and deliver safe and healthy housing to transgender/intersex prisoners.

Plaintiff have and continue to suffer physical injury, mental injury and emotional distress from being force to live in fear of being Sexually Abused, Sexually Assaulted, and Sexually Harassed by male staff strip searches and Pat-Frisks.

Defendants failure to plan, design, and deliver safe and healthy living conditions base on P.R.E.A. standards was and is the proximate cause of plaintiff's injuries.

Accordingly, defendants are guilty of negligence in failing to plan, design, and deliver safe housing for transgender/intersex prisoners at NJSP.

### REQUESTED RELIEF

Wherefore plaintiff request that the court grant the following relief:

A) Issue a declaratory judgment outlining plaintiff rights under substantive Due Process invasion of bodily security; equal treatment as other women.

B) Issue a permanent injunction ordering defendants and their agents to cease conducting Pat-Frisk and Strip Searches on her by male officers, pursuant to New Jersey Administrative

Code (N.J.A.C.) 10A:3-5.6; 10A:3-5.7.

C) Award ~~compensa~~tory, nominal, and punitive damages in the amount of $100,000.00 jointly and severally against the defendants.

D) Any ~~other relief~~ this court see's as a matter of law and facts pleaded.

I declare ~~under~~ the penalty of perjury that the foregoing statements made by me are true and correct to the best of my knowledge. And is gounded in law.

Date: 4-19-20

Lamont-Oshea.. Douglas
Declarant/Next Friend,   Sui juris

Lamont O. Douglas
Plaintiff/ Hostage